IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| CHARLES DANIELS (#2010-0809144), | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. 14 C 1533 |
| | ) | Judge Amy J. St. Eve |
| OFFICER RIVERS, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Charles Daniels ("Plaintiff"), a pretrial detainee incarcerated at the Cook County Jail, brought this 42 U.S.C. § 1983 action against Cook County Jail Officer Rivers ("Defendant") concerning an incident at the jail on August 25, 2013. Plaintiff alleges that Defendant used excessive force in response to Plaintiff asking to go to the barber shop. Currently pending before the Court is Defendant's motion for summary judgment.[1] Defendant contends that Plaintiff's settlement of his prior case, *Daniels v. Ting*, 13 C 3112 (N.D. Ill.), included an agreement to release all claims against Cook County Jail employees that arose during the two-year period before the execution of the stipulation to dismiss. Plaintiff has responded. For the reasons stated herein, the Court grants Defendant's motion and dismisses this case.

---

[1] Defendant's filing is labeled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(d) or, alternatively, as a motion for summary judgment under Fed. R. Civ. P. 56(a). (R. 13). Both Defendant's and Plaintiff's filings treat the motion as one for summary judgment–Defendant filed N.D. Ill. Local Rule 56.1 Statement of Material Facts; Plaintiff responded to Defendant's Rule 56.1 Statement and submitted additional facts. Furthermore, addressing Defendant's motion requires consideration of materials outside the complaint that are not public record (a settlement agreement as well as an email exchange between attorneys). The court accordingly treats Defendant's motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012).

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Because Plaintiff is a pro se litigant, Defendant served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure and Local Rule 56.1.

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56. 1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643–44 (7th Cir. 2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [ ] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth

in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632; *see also Frey Corp. v. City of Peoria, Ill.*, 735 F.3d 505, 513 (7th Cir. 2013).

In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012).

In the present case, Defendant filed a Rule 56.1 Statement with factual allegations supported by citations to the record. (R. 14, Def. Statement of Material Facts ("SOF"); *see also* Local Rule 56.1(a)). Plaintiff filed a response to Defendant's Rule 56.1 Statement and, for the most part, cites to materials in the record. (R. 23; *see also* Local Rule 56.1(b)). Plaintiff also included additional factual statements in his memorandum in response to Defendant's summary judgment motion. (*See* R. 24). Defendant replied both to Plaintiff's response to Defendant's Rule 56.1 Statement, (R. 28), and to Plaintiff's additional facts stated in his memorandum. (R. 27). Most of the facts are not disputed as they pertain to the terms of the settlement agreement executed in Plaintiff's prior case. With the above standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

Plaintiff filed this lawsuit sometime between February 25 (date he signed the complaint) and March 4, 2014 (the date the Court received it). (R. 14, Def. Statement of Material Facts ("SOF") ¶ 1;

3

R. 23, Pl. Resp. ¶ 1).² He asserts that Defendant used excessive force against Plaintiff on August 5, 2013. (*Id.*). Prior to this case, Plaintiff had filed five suits in this Court, and his complaint in this case listed all five suits in the section requesting his litigation history. (Def. SOF ¶ 2; Pl. Resp. ¶ 2). In two of his prior cases, *Daniels v. Ting*, No. 13 C 3112 (N.D. Ill.) and *Daniels v. Monsour*, No. 11 C 8346 (N.D. Ill.), the Court recruited counsel to represent Plaintiff. (Def. SOF ¶ 3; Pl. Resp. ¶ 3) (case number 11 C 8346 alleged deliberate indifference to Plaintiff's hip condition prior to surgery; case number 13 C 3112 alleged deliberate indifference to his post-surgery condition). In April of 2014, a settlement agreement was reached in *Daniels v. Ting*, No. 13 C 3112, at a settlement conference before Magistrate Judge Geraldine Soat Brown. (Def. SOF ¶ 4; Pl. Resp. ¶ 4) (case 11 C 8346 settled sometime earlier).

The settlement agreement for case number 13 C 3112 included the following relevant language with respect to case number 13 C 3112 and Plaintiff's other cases:

> 4. Plaintiff agrees to dismiss any and all claims against Defendants arising out of *Daniels v. Cook County*, No. 13 C 3112, N.D. Ill., as well as any claims against Cook County and Thomas Dart which occurred while Plaintiff was housed at Cook County Jail within the two-year period prior to the execution of the stipulation to dismiss.

(Def. SOF, Exh. B ¶ 4).

> 6. Other than for Plaintiff receiving the Settlement Amount, Plaintiff, for himself, his heirs, and his personal representatives, fully and forever releases, acquits, and discharge[s] Defendant, and its agents, employers, and former employers, either in their official or individual capacities, from any and all actions, suits, debts, sums of money, accounts and all claims and demand, of whatever nature, in law or in equity, including but not limited to any and all claims of Constitutional violations against Plaintiff, and/or any damaged or destroyed property, and any cots accrued arising out of Plaintiff's interactions with Cook County Sheriff Department Officers, Cook County Employees, and/or any other employees of the Cook County Department of Corrections or Cook County, which is the subject of *Daniels v. Cook County*, 13 C 3112 N.D. Ill., in the

---

² Although Plaintiff states he filed the instant suit on May 13, 2014, (Pl. Resp.¶ 1), the complaint was signed on February 25, 2014, and was received on March 4, 2014, (R. 1, Complaint). Plaintiff submitted an amended complaint on May 13, 2014, (R. 6); however, it is clear from the record that Plaintiff's complaint was filed in either late February or early March of 2014.

4

United States District Court for the Northern District of Illinois, Eastern Division, or any claim or suit which he, his heirs, assigns, and legal representatives, may heretofore or hereafter have had by reasons of said incidents, including but not limited to any and all claims for Constitutional violations against Plaintiff, state law claims, injunctive relief claims, damaged or destroyed property, as well as any such claims against Cook County which occurred while Plaintiff was housed in the Cook County Jail within the two year period prior to the execution date of the stipulation to dismiss (hereinafter collectively referred to as "Claims"), and any costs accrued in connection to the Claims against Defendant o[r] former named Defendants. This release does not and shall not in any way preclude Plaintiff from participating in, and recovering as a member of any class action involving Cook County Jail during any timeframe. Nothing herein constitutes or should constitute a release of (1) rights or claims that either Plaintiff or Defendants have under this settlement agreement; or (ii) any rights or claims that arise out of conduct occurring after the execution date of this agreement. Notwithstanding any unrelated separate class action suits involving Cook County Jail that plaintiff might join, **this agreement is a general release.**

(*Id.* at ¶ 6) (emphasis appears to be in original).

    17. This agreement is based upon a good faith determination of the parties to resolve a disputed claim. The parties have not shifted responsibility of medical care to Medicare in contravention of 42 U.S.C. Sec. 1395(b). Plaintiff represents that he is responsible for confirming the amount of any and all past Medicare payments and represents that he is not subject to any Medicare liens related to this lawsuit or any claims therein. If Plaintiff is the subject of any such Medicare payments, Plaintiff bears the sole responsibility for reimbursing this amount in its entirety and any Medicare right of reimbursement related to this suit will be satisfied by Plaintiff. It is further understood and agreed that this settlement forever waives Plaintiff's rights to claim compensation or reimbursement from Defendants for future medical treatment as a result of this incident. Moreover, the parties have determined and concur that a Medicare Set Aside Arrangement for future medical treatment and prescription drugs is not necessary as a result of the incident complained of and no monies are allotted for future medical treatment resulting from this incident. The parties resolved this matter in compliance with both state and federal law.

(*Id.* at ¶ 17).

18. Plaintiff represents and warrants that all bills, costs, and liens resulting from or arising out of Plaintiff's alleged injuries, claims, or lawsuit are Plaintiff's responsibility to pay, including any Medicare lien. Plaintiff agrees to assume responsibility for satisfaction of any and all rights to payments, claims, or liens of any kind, that arise from or are related to payments made or services provided to Plaintiff or on Plaintiff's behalf. Plaintiff agrees to assume responsibility for all expenses, costs, or fees incurred by Plaintiff related to Plaintiff's alleged injuries, claims or lawsuit including without

> limitation all Medicare conditional payments, subrogation claims, liens or other rights to payment, relating to medical treatment or lost wages that have been or may be asserted by any health care provider, insurer, governmental entity, employer or other person or entity. Further, Plaintiff will indemnify, defend, and hold Defendants harmless from any and all damages, claims and rights to payment, including any attorneys' fees brought by any person, entity or governmental agency to recover any of these amounts.

(*Id.* at ¶ 18).

On July 7, 2014, based on Plaintiff's oral request, the Court dismissed case number 13 C 3112 without prejudice. (Def. SOF ¶ 4). The parties were given until August 22, 2014, to seek reinstatement and, if no such request was made, the dismissal became one with prejudice. *See Daniels v. Ting*, No. 13 C 3112 (N.D. Ill. July 7, 2014).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

**ANALYSIS**

Based on paragraphs four and six from the settlement agreement, Defendant contends that Plaintiff settled not only claims in case number 13 C 3112, but also all claims arising during the two-year period prior to the execution of the stipulation to dismiss. Defendant's contention that the settlement agreement bars the instant suit relies on both: (1) Illinois contract law and (2) federal common law of *res judicata* and claim preclusion.

Plaintiff acknowledges that "[a] global settlement was reached" in his prior case, (R. 24 at 3 ¶ 3), but contends that he agreed to dismiss only claims against the Defendants named in cases *Daniels v. Mansour*, No. 11 C 8346, and *Daniels v. Ting*, No. 13 C 3112 (*Id.* at ¶ 4), and only claims concerning the inadequate medical attention that was the subject of case number 13 C 3112. (R. 23, Pl. Rule 56.1 Resp. ¶¶ 5-8, citing Settlement Agreement ¶¶ 17, 18).

**I.      Illinois Contract Law**

A settlement agreement is considered a contract, and both its construction and enforcement are governed by state contract law of the state in which the parties executed the agreement. *Cannon v. Burge*, 752 F.3d 1079, 1088-89 (7th Cir. 2014); *Lewis v. School Dist. #70*, 648 F.3d 484, 486 n.1 (7th Cir. 2011). "A release within a settlement agreement also is governed by contract law." *Cannon*, 752 F.3d at 1088, citing *Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991); *Farmers Auto. Ins. Ass'n v. Kraemer*, 857 N.E.2d 691, 693 (Ill.App. 5th Dist. 2006).

"Where a written agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids." *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984); *see also Whitlock*, 581 N.E.2d at 667 ("[t]he intention of the

parties to contract must be determined from the instrument itself, and construction of the instrument where no ambiguity exists is a matter of law"); *Haisma v. Edgar*, 578 N.E.2d 163, 168 (Ill. App. 1st Dist. 1991) (where there is no ambiguity in the language of a settlement agreement, the determination of the intent of the parties is governed by the contract language alone).

"In contrast, when a contract is ambiguous, construction of the agreement is a question of fact, and the finder of fact may consider parol evidence in determining the intent of the parties."[3] *Cannon*, 752 F.3d at 1089, citing *Whitlock*, 581 N.E.2d at 667. "In Illinois, a contract is considered ambiguous if it is capable of being understood in more than one sense." *Cannon*, 752 F.3d at 1089, citing *Whitlock*, 581 N.E.2d at 667; *Farmers Auto. Ins. Ass'n*, 857 N.E.2d at 693.

The language of the settlement agreement in case number 13 C 3112 clearly and unambiguously shows that Plaintiff was not simply releasing claims related to case number 13 C 3112. Plaintiff "agree[d] to dismiss any and all claims against Defendants arising out of *Daniels v. Cook County*, 13 C 3112, N.D. Ill., as well as any claims against Cook County and Thomas Dart which occurred while Plaintiff was housed in the Cook County Jail within the two year period prior to the execution date of the stipulation to dismiss." (R. 14-1, Exh. B, Settlement Agreement at ¶ 4). Additionally, paragraph

---

[3] The Seventh Circuit in *Cannon* noted that two lines of cases appeared to exist in Illinois as to whether courts can consider extrinsic evidence when addressing the enforceablity of language in a settlement agreement and determining the intent of the parties. *Cannon*, 752 F.3d at 1088-89, citing *Rakowski*, 792 N.E.2d at 794 (if the settlement agreement's language is unambiguous, the intent of the parties is determined from such language without considering parol evidence), and *Carlile v. Snap–on Tools*, 648 N.E.2d 317, 321 (Ill.App. 4th Dist.1995) (the intent of the parties"is discerned from the language used *and the circumstances of the transaction*") (emphasis added). The Seventh Circuit, however, tracing the language "and the circumstances of the transaction" back to its original source, determined that Illinois law looks beyond a contract's unambiguous language to the circumstances of the transaction only in the instance of fraud, i.e., where the contract language alone cannot demonstrate the parties' intent. *Cannon*, 752 F.3d at 1089-90. Since fraud is not an issue in this case, this Court will follow the well-researched reasoning in *Cannon* and will look to parol evidence and the circumstances of the transaction only if the language of the settlement agreement is ambiguous.

six states that Plaintiff was releasing not only any claim "which is the subject of *Daniels v. Cook County*, 13 C 3112 N.D. Ill.," but also "any claim or suit which he, his heirs, assigns, and legal representatives, may heretofore or hereafter have had by reasons of said incidents, including but not limited to any and all claims of Constitutional violations against Plaintiff, state law claims, . . ., as well as any such claims against Cook County which occurred while Plaintiff was housed in the Cook County Jail within the two year period prior to the execution date of the stipulation to dismiss." (*Id.* at ¶ 6). The settlement agreement also unambiguously states that Plaintiff was releasing claims not only against the Defendants in case number 13 C 3112, but also "Cook County Sheriff Department Officers, Cook County Employees, and/or any other employees of the Cook County Department of Corrections or Cook County." (*Id.*). Plaintiff further agreed: "Notwithstanding any unrelated separate class action suits involving Cook County Jail that plaintiff might join, this agreement is a general release." (*Id.*)

It is clear from the language of the settlement agreement that, except for Plaintiff "participating in and recovering as a member of any class action involving Cook County Jail during any time frame," (*id.*), he released all claims against all Cook County Jail officials and employees arising from his confinement at the jail during the two years before the stipulation to dismiss. *See Darvosh v. Lewis*, __ F. Supp.2d __, No. 13 C 4727, 2014 WL 4477363 at *3 (N.D. Ill. Sept. 5, 2014) (Castillo, Chief J.) (another member of this Court determined that similar language in a release between a Cook County Jail pretrial detainee and Cook County Jail officers was a general release of all claims arising during the two-year period before execution of the settlement agreement and not only claims relating to the suit being settled).

Plaintiff does not contend that the language from paragraphs four and six of his settlement agreement is ambiguous. Nor does he dispute that the settlement was a "global settlement." (R. 24,

9

Pl.'s Memorandum at 3 ¶ 3). Rather, referring to paragraphs 17 and 18 of the settlement agreement, he contends that he released only claims about medical expenses related to the deliberate indifference asserted 13 C 3112. Paragraphs 17 and 18, however, which are quoted in their entirety above, clearly address only the "responsibility for reimbursing [any Medicare liens or payments]." (R. 14-1, Exh. B, ¶ 17). Nothing in the settlement agreement indicates that paragraphs 17 and 18 limit the release to only medical reimbursement claims related to case number 13 C 3112. Even reading paragraphs 17 and 18 in conjunction with paragraphs four and six, it is clear Plaintiff released all claims, except class action claims, that arose during the two years prior to the stipulation to dismiss and retained responsibility for reimbursing any medical expenses.

To the extent there is any ambiguity the release was for all claims and not simply claims relating to case number 13 C 3112, Defendant has provided an email exchange between the parties prior to their signing of the settlement agreement. The exchange between the attorneys shows that Plaintiff's attorney sought not only to preserve Plaintiff's participation in any class action suits but also to delete the agreement's statement: "This agreement is a general release." (R. 27-1 at 17 and 24). Defendant's attorney agreed to allow language preserving Plaintiff's participation in a class action suit but refused to delete the general release language, which remained in the agreement. The email exchange thus demonstrates and reinforces that, apart from claims in any class action suits against Cook County Jail officials, the agreement released all claims arising during the two years prior to the execution of the stipulation to dismiss.

## II. Claim Preclusion

In addition to Illinois contract law, Defendant relies upon federal law on claim preclusion as a ground for barring the instant suit. Federal common law determines the preclusive effect of a federal

court judgment. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *Ross ex rel. Ross v. Board of Educ. of Tp. High School Dist. 211*, 486 F.3d 279, 283 (7th Cir.2007). In federal court, *res judicata* (claim preclusion) has three elements: "(1) an identity of the parties or their privies in the first and second lawsuits; (2) an identity of the cause of action; and (3) a final judgment on the merits in the first suit." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014).

Neither the first nor the third element appear to be at issue. Both this case and case number 13 C 3112 had the same Plaintiff and case number 13 C 3112 released not only the defendants in that case, but also all "Cook County Sheriff Department Officers, Cook County Employees, and/or any other employees of the Cook County Department of Corrections or Cook County." (R. 14, Exh. B ¶ 6).

Furthermore, the judgment in case number 13 C 3112 is final. "A voluntary dismissal with prejudice pursuant to a settlement agreement operates as a final judgment on the merits that is entitled to full res judicata effect." *Fox v. Will County*, No. 03 C 7349, 2012 WL 2129393 at *4 (N.D. Ill. June 8,2012) (Darrah, J.), citing *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir. 2000). Although Plaintiff filed the instant case in February or March of 2014, before case number 13 C 3112 was dismissed without prejudice on July 7, 2014, and the judgment became final August 22, 2014, the sequence of when the suits were filed does not prevent the application of *res judicata*. The doctrine applies even if the judgment of the other suit occurred while the second suit was pending. *See Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999); *see also Giragosian v. Ryan*, 547 F.3d 59, 63-64 (1st Cir. 2008).

As to the identity of the causes of the action, courts usually look to whether the claims in the two cases "emerged from the same core of operative facts." *Highway J Citizens Group v. United States Dept. of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006) (citation omitted); *see also Cannon,* 752 F.3d at

1101. Where the final judgment was based upon a settlement agreement, however, "the express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement." *Toscano v. Connecticut General Life Ins. Co.*, 288 Fed. Appx. 36, 38, 2008 WL 2909628 at *2 (3rd Cir. 2008), citing *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1291 (11th Cir. 2004) (a court must look to the language of the settlement agreement when determining its preclusive effect on other claims). Even though the claim raised in Plaintiff's case number 14 C 1533 (excessive force) did not arise from the same core of operative facts involved in case number 13 C 3112 (deliberate indifference to medical needs), as determined above, the settlement agreement in case number 13 C 3112 covers the excessive force claim raised in this case. The dismissal of Plaintiff's case 13 C 3112 based upon the settlement agreement thus precludes him from bringing his excessive force claim in this case.

Accordingly, both Illinois contract law and federal common law of *res judicata* and claim preclusion prevent Plaintiff from proceeding with the claim he asserts in this case.

## CONCLUSION

For the reasons stated in this opinion, Defendant's motion for summary judgment [13] is granted and judgment is rendered for Defendant. This case is closed.

ENTER:

**AMY J. ST. EVE**
**United States District Judge**

DATE: December 9, 2014